IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| TAMMY KENT, as mother and next friend of TK, | * |
| | * |
| Plaintiff, | * |
| vs. | CASE NO. 4:09-CV-70 (CDL) |
| | * |
| CALLAWAY GARDENS RESORT, INC., a Georgia corporation doing business in Alabama, | * |
| | * |
| Defendant. | * |

O R D E R

This action arises from the alleged negligence of Defendant Callaway Gardens Resort, Inc. in maintaining the premises of its Cecil B. Day Butterfly Center ("Butterfly Center"). Plaintiff Tammy Kent alleges that due to Defendant's negligence, Plaintiff's minor daughter ("TK") sustained serious injury when she slipped and fell while visiting the Butterfly Center. Presently pending before the Court is Defendant's Motion for Summary Judgment (Doc. 35). For the following reasons, Defendant's motion is denied.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In determining whether a *genuine* issue of *material* fact

exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

FACTUAL BACKGROUND

Viewing the evidence in the light most favorable to Plaintiff reveals the following:

In December of 2007, several members of the Kent family visited the Butterfly Center while they were vacationing in Georgia. Those present at the Butterfly Center were TK, her father Norman Kent ("Mr. Kent"), her older sister ("PK"), and other family members. (TK Dep. 11:17-12:5, Nov. 11, 2009.)[1] As TK walked through the Butterfly Center with her camera getting ready to take a picture of a butterfly, she fell and was injured. (*Id.* at 25:1-26:8.) At the time of TK's fall, the Butterfly Center floor was "slippery and wet." (Ex. A to Pl.'s Resp. to Def.'s Mot. for Summ. J. [hereinafter Pl.'s Resp.], TK Aff. ¶ 5, Feb. 19, 2010.) TK never saw water on the

---

[1]TK's mother, Plaintiff Tammy Kent, was not present. (TK Dep. 13:19-23.)

Butterfly Center floor;[2] however, she felt wetness as soon as she fell. (TK Dep. 52:11-21; TK Aff. ¶ 5 ("The surface of the floor had enough water upon it that my hands and clothing became wet immediately after my fall.").) TK alleges, therefore, that she slipped and fell because of the slippery and wet condition of the Butterfly Center floor. (TK Dep. 24:14-15; TK Aff. ¶ 5.)

Although they did not see TK fall, Mr. Kent and PK were each present at the Butterfly Center and came to TK's aid after she fell. (Norman Kent Dep. 17:9-14, Nov. 11, 2009 [hereinafter N. Kent Dep.]; PK Dep. 10:8-16, Nov. 11, 2009.) Like TK, neither Mr. Kent nor PK saw any water where TK fell. (N. Kent Dep. 18:20-22; PK Dep. 12:13-15.) PK, however, saw water on TK's pants after her fall. (PK Dep. 11:5-7.)[3] TK did not tell PK that she had slipped in water until the family was leaving the Butterfly Center. (*Id.* at 14:1-16.) It is unclear when TK told Mr. Kent why she fell. (N. Kent Dep. 18:23-19:14.)

---

[2]There was nothing to block TK's view of the water had she looked down, and the lighting that day was "okay." (TK Dep. 27:8-16.) TK explained, however, that she did not see the water on the floor before she encountered it because she was looking at the butterflies and taking photographs. (TK Aff. ¶ 6.)

[3]Mr. Kent and PK also testified that there was nothing to block their view of any water had it been present. (N. Kent Dep. 24:15-21; PK Dep. 12:3-8.)

3

Defendant's policy was to have an employee in the Butterfly Center at all times when it was open to the public.[4] (Buckman Dep. 23:15-23, Jan. 11, 2010.) Mr. Michael Buckman, one of Defendant's employees at the Butterfly Center, was on the premises on the day of TK's slip and fall. (*Id.* at 18:16-21.) The Butterfly Center did not assign employees to inspect the facility on a regular basis for guest safety. (*Id.* at 23:6-11.) Specifically, the Butterfly Center had no policy, written or otherwise, for inspecting the facility's floors for moisture. (*Id.* at 40:2-10.) Instead, Butterfly Center employees "would walk through the conservatory and the rest of the facility on a daily basis to check the readiness of the facility for the guests." (*Id.* at 17:12-15.) The employees did not use any specific guidelines, written or otherwise, to inspect the facility. (*Id.* at 16:22-17:8, 18:10-15, 19:7-18.) Instead, they "were looking for cleanliness" and would clean up to the best of their ability "[a]nything that would impact the guest experience." (*Id.* at 17:16-18:9, 21:23-22:8.) Although the Butterfly Center did not have any policies regarding keeping the floors dry, Mr. Buckman testified that when he walked through the facility, he would inspect the floors and look for "anything that would hinder the guest experience," including water. (*Id.* at 21:12-22:3.) Mr. Buckman testified that he had a

---

[4] The Butterfly Center did not keep an employee log, so it is possible there were times where the facility was open to the public but no employee was present. (Buckman Dep. 23:24-24:5, Jan. 11, 2010.)

4

personal practice of walking through the Butterfly Center ten to fifteen times per day in the course of his work. (*Id.* at 22:14-18.) However, the purpose of his walk-throughs was not to inspect the facility for safety, but rather to "come and go from the lab, to converse with guests, answer questions, [and] attend the programs in the lobby." (*Id.* at 22:21-23:5.) Although he was aware that water from rain leaks and "misters" occasionally accumulated on the Butterfly Center floor (*id.* at 32:13-33:10), Mr. Buckman testified that the Butterfly Center floors are generally safe and that "the floors [are not] even slippery when [they are] wet" (*id.* at 31:5-18).

## DISCUSSION

Under Georgia law, a landowner is liable to invitees for injuries caused by his failure to exercise ordinary care in keeping his premises and approaches safe.[5] O.C.G.A. § 51-3-1. This duty of ordinary care requires the owner to protect the invitee from unreasonable risks of harm of which the owner has superior knowledge and to inspect the premises to discover possible dangerous conditions of which the owner does not have actual knowledge. *Robinson v. Kroger Co.*, 268 Ga. 735, 740, 493 S.E.2d 403, 408-09 (1997). The

---

[5]The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332, based on diversity of citizenship between the parties. The parties appear to agree Georgia law controls. Therefore, the Court will apply the substantive law of the State of Georgia in deciding Defendant's summary judgment motion. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-80 (1938).

Georgia Supreme Court has adopted a two-prong test in slip-and-fall cases. *Id.* at 748, 493 S.E.2d at 414. To establish liability, a plaintiff-invitee "must prove (1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier." *Id.* Further, as with all negligence cases, a slip-and-fall plaintiff must establish causation. *Pennington v. WJL, Inc.*, 263 Ga. App. 758, 760, 589 S.E.2d 259, 261 (2003). Finally, the Georgia Supreme Court instructs that "the 'routine' issues of premises liability, i.e., the negligence of the defendant and the plaintiff, and the plaintiff's lack of ordinary care for personal safety are generally not susceptible of summary adjudication, and that summary judgment is granted only when the evidence is plain, palpable, and undisputed." *Robinson*, 268 Ga. at 748, 493 S.E.2d at 414.

## I. Defendant's Knowledge

There is no evidence that Defendant had actual knowledge of the wet floor Plaintiff contends caused TK's fall.[6] The question, therefore, is whether Plaintiff has produced evidence that Defendant

---

[6] There is some evidence Defendant knew wet spots occasionally formed on the Butterfly Center floor. (Buckman Dep. 32:13-33:10.) There is no evidence, however, that Defendant knew of the specific wet spot Plaintiff contends caused TK's fall.

had constructive knowledge. A lack of reasonable inspection procedures evinces constructive knowledge:

> Constructive knowledge may be inferred when there is evidence that the owner lacked a reasonable inspection procedure. In order to prevail at summary judgment based on lack of constructive knowledge, the owner must demonstrate not only that it had a reasonable inspection program in place, but that such program was actually carried out at the time of the incident . . . . Accordingly, the determinative question in this [case] is whether, viewed in the light most favorable to plaintiff[], the evidence shows that [the owner] followed reasonable inspection procedures at the time of the incident.

*Avery v. Cleveland Ave. Motel, Inc.*, 239 Ga. App. 644, 645, 521 S.E.2d 668, 670 (1999) (third alteration in original) (internal quotation marks omitted). Here, Plaintiff produced evidence that Defendant did not have a reasonable inspection program in place at the time of TK's fall. (Buckman Dep. 21:14-16 ("[W]ere there any policies with regard[] to keeping the floors dry? A. No, sir."); *id.* at 23:6-11 ("Q. Was there -- was there anyone that was assigned, as of December 28, 2007, to walk through the butterfly house on a regular basis to check to make sure that everything was still safe for the guests? A. No, sir.").) Evidence of Defendant's practice of having employees walk through the Butterfly Center to check the readiness of the facility for the guests and to ensure cleanliness, not safety, is not sufficient to establish a reasonable inspection procedure as a matter of law. *Hartley v. Macon Bacon Tune, Inc.*, 234 Ga. App. 815, 818, 507 S.E.2d 259, 262 (1998) (finding policy that

7

employees should "tidy up" insufficient to negate constructive knowledge as a matter of law); *KMart Corp. v. Jackson*, 239 Ga. App. 176, 178, 521 S.E.2d 93, 96 (1999) (finding inspection policy consisting of "having employees walk the store" insufficient to negate constructive knowledge as a matter of law). Further, even if the Court assumed Defendant did have a reasonable inspection procedure in place, Defendant has not produced any evidence that its inspection procedure was actually carried out at the time of TK's fall. (*See* Buckman Dep. 23:12-14 ("Q. And so obviously there was no log kept of anyone doing any regular inspections? A. No, sir.").) Therefore, genuine issues of material fact remain as to whether Defendant had constructive knowledge of the wet floor which Plaintiff contends caused TK's fall.

Defendant argues that its constructive knowledge cannot be inferred since "Plaintiff has produced no evidence to suggest that even a thorough inspection immediately before the fact would have discovered the water Miss TK believed caused her to slip." (Def.'s Br. in Supp. of Mot. for Summ. J. 9.) The Court disagrees.

Defendant is correct that "[i]f there is no evidence that the water could have been discovered during a reasonable inspection, then no inference arises that [D]efendant['s] failure to discover the defect was the result of any alleged failure to inspect." *Chastain v. CF Ga. N. Dekalb L.P.*, 256 Ga. App. 802, 803, 569 S.E.2d 914, 916

(2002). However, there is evidence in this case from which a reasonable jury could conclude that Defendant would have discovered the hazard if it had a reasonable inspection program that was implemented at the time of the accident. The common thread running through those cases finding that a hazard could not be discovered during a reasonable inspection is testimony that the hazard was difficult to see on the floor, even if someone was looking for it. *See, e.g., id.* ("Q[uestion to Ms. Chastain]: Would the water on the floor have been easily visible to you if you had been looking down? A: No." (alteration in original) (internal quotation marks omitted)); *Haskins v. Piggly Wiggly S., Inc.*, 230 Ga. App. 350, 351, 496 S.E.2d 471, 473 (1998) ("[Plaintiff] testified that she would not have been able to have seen the water before she fell even if she had been looking down at the floor."). No such testimony exists here.[7] Defendant has produced insufficient evidence that the wet floor would not have been discovered during a reasonable inspection (when

---

[7]TK, PK, and Mr. Kent each testified that they did not see the water because they did not look for it, not because the water hazard was difficult or impossible to see had they been looking for it. (TK Dep. 27:3-7 ("Q. If you had physically looked down at the walking surface before you stepped in the water, could you have seen the water? . . . A. I don't know."); PK Dep. 11:19-21 ("Q. Did you look in the area, generally, where she had fallen? A. No."); N. Kent Dep. 23:15-24:14 ("I did not look for water. I was trying to help my daughter up off the ground, and I wasn't looking for a determination of what happened. . . . Q. [I]f there was water or foreign substance there that would have contributed to the fall, would you have seen that by virtue of having walked in the area? . . . A. I just cannot say if I would have seen it or not.").)

9

Defendant's employees would have been looking for it). To the contrary, Mr. Kent testified that water was visible on the Butterfly Center floor. (N. Kent Dep. 18:16-17 ("Q. Did you see any foreign substance . . . on the walking surface? A. There were spots where it was wet in the butterfly area. There were just different areas that had small puddles and just a little bit of water on the floor.").) Further, Mr. Buckman testified that his practice during "walk-throughs" was to look for and remove, among other things, water (Buckman Dep. 21:12-22:3), thus further indicating that water was visible on the Butterfly Center floor. Finally, Plaintiff produced evidence regarding the amount of water on the Butterfly Center floor sufficient to call into question whether a reasonable inspection would have discovered it. (TK Aff. ¶ 5 ("The surface of the floor had enough water upon it that my hands and clothing became wet immediately after my fall.").) Therefore, the Court finds that the lack of evidence produced by Defendant that water was difficult to see on the Butterfly Center floor, combined with evidence that, when viewed in the light most favorable to Plaintiff, supports a finding that the wet floor was discoverable pursuant to a reasonable inspection, creates genuine issues of material fact as to whether Defendant had constructive knowledge of the hazardous wet floor.

## II. Plaintiff's Lack of Knowledge Despite Ordinary Care

The second prong of the Georgia Supreme Court's slip-and-fall test typically requires the Court to examine "whether, taking into account all the circumstances existing at the time and place of the fall, the invitee exercised the prudence the ordinarily careful person would use in a like situation."[8] *Robinson*, 268 Ga. at 748, 493 S.E.2d at 414. However, the Georgia Supreme Court has also held that "the plaintiff's evidentiary proof concerning the second prong is not shouldered until the defendant establishes negligence on the part of the plaintiff-i.e., that the plaintiff intentionally and unreasonably exposed self to a hazard of which the plaintiff knew or, in the exercise of ordinary care, should have known." *Id.* Here, Defendant did not address TK's knowledge of the wet Butterfly Center floor in its summary judgment motion or briefing. Therefore, the Court finds that Defendant failed to point the Court to any evidence establishing TK's negligence. Accordingly, genuine issues of material fact remain as to whether TK lacked knowledge of the hazard.

## III. Causation

Finally, "[c]ausation is always an essential element in slip or trip and fall cases." *Pennington*, 263 Ga. App. at 760, 589 S.E.2d at

---

[8]The Court notes that TK was ten years old at the time of her accident. Therefore, she was only required to use "such care as [her] mental and physical capacities enable[d] [her] to exercise in the actual circumstances of the occasion and situation under investigation." O.C.G.A. § 51-1-5.

11

261. "Where the plaintiff does not know of a cause or cannot prove the cause, there can be no recovery because an essential element of negligence cannot be proven." *Id.*, 589 S.E.2d at 261-62. "A mere possibility of causation is not enough" to prevail; the plaintiff must point to something other than speculation and conjecture. *Id.*, 589 S.E.2d at 262.

Georgia courts routinely find that summary adjudication in favor of the landowner is appropriate where the plaintiff can only speculate as to what caused a fall. These cases generally involve plaintiffs who were unable to identify the hazard that caused their fall. *Id.* at 758, 589 S.E.2d at 261 ("[Plaintiff] does not recall feeling his feet strike anything. He only recalls the 'feeling of falling.'"); *Moore v. Teague*, 255 Ga. App. 220, 220-21, 564 S.E.2d 817, 819 (2002) ("Plaintiff fell in the defendant's kitchen but does not know why her legs and feet did a split; she assumed that it was from the wet floor, but she did not actually know if the floor was wet."); *Shadburn v. Whitlow*, 243 Ga. App. 555, 556, 533 S.E.2d 765, 767 (2000) ("[A]ll three ladies [including plaintiff] testified that they were not actually certain what caused [plaintiff] to fall."); *Avery*, 239 Ga. App. at 644, 521 S.E.2d at 669 ("[Plaintiff] testified that she was not actually certain what caused her to fall."); *Christopher v. Donna's Country Store*, 236 Ga. App. 219, 220, 511 S.E.2d 579, 580 (1999) ("When asked during her deposition if she knew

12

why she fell that day, [Plaintiff] responded, 'No.'"); *Hammonds v. Jackson*, 132 Ga. App. 528, 533, 208 S.E.2d 366, 369 (1974) ("[Plaintiff's] testimony was 'this one spot was-must have been mighty slippery, heavy wax or something. I don't know, but it sure tripped me.'").

The Court finds the circumstances in the present case distinguishable from those in the foregoing line of cases. Plaintiff's evidence on causation, while certainly disputed, does not rise to the level of speculation such that her claim should be decided by a lone judge rather than a jury of her peers. *Robinson*, 268 Ga. at 748, 493 S.E.2d at 414 ("In sum, we remind members of the judiciary that the 'routine' issues of premises liability, i.e., the negligence of the defendant and the plaintiff, and the plaintiff's lack of ordinary care for personal safety are generally not susceptible of summary adjudication, and that summary judgment is granted only when the evidence is plain, palpable, and undisputed."). Plaintiff has produced evidence from which a reasonable jury could conclude that a hazardous condition, a wet and slippery floor, existed when and where TK fell. (TK Aff. ¶ 5 (stating there was a "slippery and wet condition on the floor of the Cecil B. Day Butterfly Center").) Further, Plaintiff produced evidence that TK's pants were wet immediately after her fall. (PK Dep. 11:7 ("[TK's] pants were wet (indicating)."); TK Aff. ¶ 5.) From this, a

13

reasonable jury could conclude that TK stepped on Defendant's wet floor causing her pants to become wet and causing her fall.

The Court acknowledges that the Georgia Court of Appeals decision in *Christopher v. Donna's Country Store* appears superficially to support Defendant's argument that Plaintiff cannot create a genuine issue of material fact on causation. There, the plaintiff alleged she slipped and fell on a greasy substance that she did not see in the defendants' parking lot. 236 Ga. App. at 219, 511 S.E.2d at 580. The plaintiff admitted she did not know why she fell and the sole basis of her allegations was the fact that she noticed a greasy substance on her arms and clothing after her fall. *Id.* The Georgia Court of Appeals found that "the fact that [the plaintiff] noticed a greasy substance on her arms and clothing as she cleaned up is not sufficient to show that she slipped because of any such greasy substance." *Id.* at 220, 511 S.E.2d at 581. Upon closer examination, the Court finds *Christopher* distinguishable. Here, Plaintiff produced evidence that TK stepped in a wet slippery area on the floor. TK also noticed water on her pants immediately after she fell. The location of the water on her pants is consistent with and supportive of her testimony that she fell on a wet slippery floor. The Court finds that the Georgia Supreme Court in *Robinson* intended for these issues to be resolved by a jury and not by summary adjudication. Accordingly, summary judgment is not appropriate.

CONCLUSION

For the reasons discussed above, Defendant's Motion for Summary Judgment (Doc. 35) is denied.

IT IS SO ORDERED, this 18th day of June, 2010.

                                            S/Clay D. Land
                                                CLAY D. LAND
                                     UNITED STATES DISTRICT JUDGE